IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PAULALEE FIGUEROA RUPERTO,<br><br>            Plaintiff,<br><br>            v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | CIV. NO.: 14-1673 (SCC) |

### MEMORANDUM AND ORDER

Plaintiff Paulalee Figueroa Ruperto asks this court to review the decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's application for disability benefits. Docket No. 1. After a review of the record and the parties' memoranda, we remand this matter to the Commissioner.

### *STANDARD OF REVIEW*

Under the Social Security Act ("the Act"), a person is

disabled if he is unable to do his prior work or, "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d). The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Thus, the Commissioner's decision must be upheld if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence *de novo*. *Lizotte v. Sec'y of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir. 1981).

The scope of our review is limited. We are tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's decision must be reversed if his decision was derived "by ignoring evidence, misapplying law, or judging matters entrusted to experts."

*Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). In reviewing a denial of benefits, the ALJ must have considered all of the evidence in the record. 20 C.F.R. § 404.1520(a)(3).

The Act sets forth a five-step inquiry to determine whether a person is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id.* Step one asks whether the plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If he is, he is not disabled under the Act. *Id.* At step two, it is determined whether the plaintiff has a physical or mental impairment, or combination of impairments, that is severe and meets the Act's duration requirements. 20 C.F.R. § 404.1520(a)(4)(ii). The plaintiff bears the burden of proof as to the first two steps. Step three considers the medical severity of the plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If, at this step, the plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1, and meets the duration requirements, he is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the plaintiff is not determined to be disabled at step three, his residual functional capacity ("RFC") is assessed. 20 C.F.R.

| FIGUEROA-RUPERTO v. COMMISSIONER | Page 4 |
|---|---|

§§ 404.1520(a)(4), (e). Once the RFC is determined, the inquiry proceeds to step four, which compares the plaintiff's RFC to his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the plaintiff can still do his past relevant work, he is not disabled. *Id.* Finally, at step five, the plaintiff's RFC is considered alongside his "age, education, and work experience to see if [he] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the plaintiff can make an adjustment to other work, he is not disabled; if he cannot, he is disabled. *Id.*

## *BACKGROUND AND PROCEDURAL HISTORY*

Plaintiff made her initial application for disability benefits on June 27, 2012, alleging that her disability began on March 5, 2012. *See* TR. at 1149.[1] The claim was initially denied, as was the reconsideration, and Plaintiff thereafter requested a hearing. *See id.* at 1062-1085. The hearing was held on May 20, 2014. *See* TR. at 36-60. The ALJ determined that Plaintiff was not disabled. *See id.* at 15-29. The appeals council refused to review the ALJ's decision, *see id.* at 1-5, and she filed this appeal. Docket No. 1.

---

1. We will refer to the Social Security Transcript as "TR." throughout.

At step three, the ALJ determined that Plaintiff did not have a combination of impairments equaling the severity of one of those listed at 20 C.F.R. pt. 404, subpt. P, app. 1. TR. at 20. The ALJ concluded that Plaintiff had the Residual Functional Capacity ("RFC") to perform "light" work . *Id.* at 29. The ALJ then found that while she could no longer perform her past relevant work, there existed work that she could perform; therefore, she was not disabled. *Id.*

## ANALYSIS

Plaintiff alleges three errors in the ALJ's decision. First, she claims that the ALJ erred in finding that her mental condition did not satisfy the criteria of Listing 12.04 for Affective Disorders, and 12.06 for Anxiety-Related Disorders. Second, Plaintiff claims that the ALJ erred in finding that her bronchial asthma did not qualify under Listing 3.03B. Third, Plaintiff complains that the ALJ did not properly evaluate her subjective complaints of pain in making the RFC determination.

**1.1 Plaintiff's Mental Impairment**

The first "error" concerns the ALJ's determination at step three of the sequential evaluation process, where the ALJ found that Plaintiffs' impairment did not meet the criteria

listed at 20 C.F.R. Part 404 Subpart P, Appendix 1. To succeed, Plaintiff carries the burden to produce evidence that her impairment results in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404 Subpart P, Appendix1.

In finding that Plaintiff did not meet the criteria of Listings 12.04 and 12.06 of Appendix 1, the ALJ pointed to the evaluations of Dr. Luis Toro and Dr. Yaritza M. López Robledo, both consultative examiners, as well as the Plaintiff's self-described symptoms. *See* TR. at 22. The Commissioner's regulations require the ALJ to give the opinions of treating physicians "on the nature and severity" of a plaintiff's impairments "controlling weight," at least where the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2). *But see* 20 C.F.R. § 404.1527(d)(2) (noting that "final responsibility for deciding" various issues, including an

impairment's nature and severity, "is reserved to the Commissioner"). The ALJ must "always give good reasons" for the weight it gives a treating source opinion. 20 C.F.R. § 404.1527(c)(2); *see also Polanco-Quiñones v. Astrue*, 477 F. App'x 745, 746 (1st Cir. 2012) (per curiam).

The ALJ found that Plaintiff had only "mild restriction" in her activities of daily living because she stated during her consultations with Dr. Toro and Dr. López that she was able to take care of her personal needs. *See* TR. at 22. Likewise, the ALJ concluded that Plaintiff had "mild difficulties" in social functioning since she did not allege any difficulties in interacting with others in her Adult Functions Report. *Id*. As to concentration, persistence and pace, the ALJ found that Plaintiff had "moderate difficulties." *Id*.

Plaintiff states that the ALJ did not give sufficient weight to her multiple hospitalizations and emergency room visits on account of her emotional condition. After reviewing the record, we agree with that assessment. Plaintiff received treatment from the State Insurance Fund throughout 2012. *See* TR. at 87, 146 and 159. She was also treated at Hospital Panamericano and Hospital de Damas. *Id.* at 78-86 and 793-795. The ALJ took into consideration Plaintiff's hospitalizations, but pointed out

that she has not required any inpatient treatment since her discharge in September of 2012. *See* TR. at 25. Moreover, the ALJ highlighted that Plaintiff's progress notes showed that, as of April 2014, her prognosis had improved. *Id*. at 26. However, a thorough analysis of the evidence paints a more complicated picture.

For example, when Plaintiff was evaluated by Dr. Esparza on October 22, 2013, it was determined that she was at "high risk" and was "dangerous." *See* TR. at 737. Similarly, on April 23, 2014, Dr. Hector Martinez at Damas Hospital in Ponce evaluated Plaintiff and concluded that she had a "generalized anxiety disorder with panic attacks and major depressive disorder, single episode, moderate." *See* TR. at 955. Hence, the record shows that even after her last hospitalization for mental-related afflictions, Plaintiff continued to exhibit symptoms consistent with a "generalized anxiety disorder with panic attacks." *See* TR. at 993. The pervasiveness of these symptoms leads us to believe that the ALJ did not properly support the conclusion that Plaintiff's mental condition is not an impairment that meets or medically equals the severity of one of these listed in 20 CFR Part 404, Subpart P, Appendix 1.

**1.2 Plaintiff's Bronchial Asthma**

Plaintiff contends that the ALJ erred in not finding that her asthma diagnosis meets the criteria of Listing 3.03(b) (*Asthma*) of Appendix 1. In order to satisfy that criteria, the claimant must show that in spite of prescribed treatment, she suffers "severe attacks" requiring physician intervention, at least once every two months, or on average six times a year. Part 404, Subpart P, Appendix 1, 3.03B. "Severe attacks," in this context, are defined as "prolonged episodes lasting at least several hours, requiring intensive treatment such as intravenous drug administration or inhalation therapy in a hospital or emergency room." Section 3.00 C.

The extensive record shows that Plaintiff visited the emergency room on numerous occasions during the relevant time period. She was admitted at Damas Hospital on March 28, 2014, with acute bronchial asthmatic symptoms. Plaintiff was discharged on April 4, 2014. *See* TR. at 862, 905. A few weeks later, on April 17, 2014, Plaintiff was once again admitted at Damas with asthma symptoms and was released on August 20. She received respiratory therapy and was assigned a level of "Urgent." *See* TR. at 927-946, 988. On April 21, 2014, Plaintiff returned to the emergency room of Damas and was admitted with "exacerbated chronic obstructive pulmonary disease." *See*

| | |
|---|---:|
| FIGUEROA-RUPERTO v. COMMISSIONER | Page 10 |

TR. at 947. She was discharged four days later. In addition to the hospitalizations of over 24 hours, Plaintiff paid frequent visits to the emergency room. On March 11, 2014, she was admitted with "strong headache and persistent cough," as well as "bronchospasm." *See* TR. at 775.

In its brief, the ALJ avers that Plaintiff's symptoms were not severe enough because the treatment reports show that she was "simply treated with Albuterol nebulizers." Docket No. 18 at page 16. The record says otherwise. In at least three consecutive instances, Plaintiff was hospitalized for several days to treat her symptoms and received "inhalational bronchodilator therapy" in the hospital. According to Listing 3.03 B, each in-patient hospitalization for longer than 24 hours to control asthma attacks, counts as two attacks. The record therefore shows that Plaintiff had at least 6 asthma attacks that lasted several hours, and that required treatment either at home or at her doctor's office with various types of remedies, including inhalation therapy and other medications. It thus appear on the evidence before us that Plaintiff's conditions meets the listing.

### III. Residual Functional Capacity

Because we remand to the ALJ regarding the conclusions at step three of the sequential analysis, we need not analyze whether the RFC determination was proper.

## *CONCLUSION*

Due to the fact that the ALJ's decision failed to adequately explain why Plaintiff's mental diagnosis and bronchial asthma do not meet the severity of Listings 12.04, 12.06, and 3.03B, respectively, contained in Part 404, Subpart P, Appendix 1, this matter is REMANDED to the Commissioner for further proceedings consistent with this opinion.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of March, 2016.

S/ SILVIA CARREÑO-COLL
UNITED STATES MAGISTRATE JUDGE